GRAND RAPIDS LUMBER CO. *v.* BLAIR

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION—CONSTITU-
   TIONAL LAW.
   In an action brought by an employer against the receiv-
   ers of a railroad corporation for damages which the for-
   mer had been compelled to pay out to an injured servant
   by reason of the negligent injury thereof by the defendants
   and the consequent recovery of compensation by the em-
   ployee from the plaintiff before an arbitration committee
   of the Industrial Accident Board, the trial court erred
   in directing a verdict for the defendant receivers on the
   theory that the statute was unconstitutional as the plain-
   tiff construed it, and under the contention that the dam-
   ages should be conclusively fixed by the amount of the
   award which the injured servant had obtained (2 Comp.
   Laws 1915, § 5468), the claim of plaintiff's attorney being
   merely too broad, and the act, when correctly construed,
   being valid.

2. SAME — CONSTITUTIONAL POWER OF LEGISLATURE — WORKMEN'S
   COMPENSATION ACT.
   A former judgment against the employer in proceedings
   of which the tort feasors had no notice may be made
   *prima facie* evidence of the liability, though the omission
   to give notice may have deprived the parties so responsible
   of any opportunity to appear in the original action; and,

accordingly, they would be entitled to interpose any defense to the suit for indemnity or contribution that might have been made by the master in the former action, with the burden of proof resting upon them to establish the defense by a preponderance of evidence.

3. SAME—EVIDENCE.
   In an action against third parties to whose negligence the employee's injury is imputed, proof of the amount of compensation paid to the workingman under the compensation act, either by an award or by agreement of the parties, is *prima facie* evidence of plaintiff's damages, subject to the right of the defendants to meet it by competent evidence that the amount was unreasonable, not paid in accordance with the statute, or not authorized by the board.

Error to Kent; Perkins, J. Submitted January 14, 1916. (Docket No. 93.) Decided March 30, 1916.

Case by the Grand Rapids Lumber Company, a corporation, against Frank W. Blair, and others, receivers of the Pere Marquette Railroad Company, a railroad corporation, for damages plaintiff had been compelled to pay to a servant injured through the negligence of defendants. Judgment for defendants on a verdict directed by the court. Plaintiff brings error. Reversed.

*Stevens T. Mason,* for appellant.

*Parker, Shields & Brown* and *Chas. E. Ward (John C. Bills,* of counsel), for appellees.

STEERE, J. On November 9, 1912, Herman Spinner, who was a teamster employed by the Grand Rapids Lumber Company, sustained a serious injury in the course of his employment, caused by an accident resulting from a wagon drawn by a pair of mules he was driving colliding with a switch engine of the Pere Marquette Railroad Company, on an alley in the city of

Grand Rapids, Mich. Previous to this accident the Grand Rapids Lumber Company elected to come under the terms of the Michigan workmen's compensation act (Act No. 10, Extra Session 1912 [2 Comp. Laws 1915, § 5428 *et seq.*]), and had insured its liability with the Maryland Casualty Company, for whose use and benefit this action is brought. Spinner claimed and received compensation for his injury from his employer under the act, which was paid by it through its insurer, consisting of physician's fees, hospital bills, and other necessary expenses, with weekly compensation while wholly incapacitated from work, amounting in all to about $900. An agreement was early made under the act between Spinner and his employer for payment of compensation while totally incapacitated, on the basis of one-half his weekly salary at the time of the accident, which was approved by the Industrial Accident Board. The length of time payments should continue was not provided for, and after a time plaintiff ceased paying, claiming Spinner was able to work, but at a hearing on June 31, 1913, at which both parties were represented, a committee of arbitration, selected under the act, awarded further compensation which was thereafter paid until the total, including medical attendance, hospital, and other necessary expenses, amounted to $902.50, for which a receipt in full satisfaction of his claim for compensation was signed by the injured employee and filed with the Industrial Accident Board. Plaintiff claimed that Spinner's injury was caused under circumstances which created a legal liability for negligence on the part of defendants as receivers for the Pere Marquette Railroad Company and brought this action under provisions of section 15, pt. 3, of the workmen's compensation act (2 Comp. Laws 1915, § 5468), which is as follows:

"Where the injury for which compensation is payable under this act was caused under circumstances

creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may, the liability of such other person."

Upon the trial plaintiff introduced testimony tending to show an accidental collision between defendant's engine and plaintiff's conveyance at the time and place charged; that in the accident Spinner sustained an injury which arose out of and in the course of his employment with plaintiff, the agreement and proceedings under the act by which compensation to the injured employee was determined and paid, his receipt in full therefor filed with the board, and circumstances surrounding the accident which the court intimated sufficiently showed actionable negligence on the part of the defendant to present an issue of fact for a jury, so far as that issue was concerned, but granted a motion for a directed verdict in favor of defendant, made at the close of plaintiff's testimony, on the ground that the section of the workmen's compensation law under which this action is brought—

"is unconstitutional because the right of an individual or a corporation under the Constitution cannot be taken away from him or it, or an obligation created whereby his property may be taken away, until he has had due notice and an opportunity to have his rights determined by a court of competent jurisdiction."

During the introduction of plaintiff's testimony, counsel for the defense made timely and sufficient objections to preserve and present the questions urged in their motion for a directed verdict. Early in the progress of the trial, when Spinner as a witness for·

plaintiff was narrating the circumstances of the accident, he stated that after he, was injured they took him "up to the home" before he "came to," and that his leg was broken, whereupon defendant's counsel objected to such testimony, and moved that it be stricken out as not covered by the declaration, stating that:

"The declaration was drafted upon the theory that there is a law which gave the plaintiff the right, if there was a liability, to sue in this way to recover the amount paid out, without regard to the extent of the injury; that there was no allegation in the declaration that his leg was broken; and that it would be conceded, for the purpose of the case, that he was sufficiently injured to be justified in going before the Industrial Accident Board, but that to go into the proof of the accident was incompetent and improper because it was not any part of the theory of the plaintiff's case."

To this counsel for plaintiff replied in part:

"What difference does it make? We have alleged that he was injured. We do not propose to go into his account of suffering in the hospital. * * * The only question I want to ask is whether or not he was injured."

After some discussion between court and counsel, defendant's counsel admitted "that he (Spinner) was justified in going before the Accident Board," saying, further, "there isn't any question about that; we know enough about his injuries to know that." In answering an objection to the admission of the employee's final settlement receipt, counsel for plaintiff said:

"If your honor please, there is nothing in the act which requires an arbitration. The only thing we are required to do is to pay the compensation. * * * It makes no difference whether he had an arbitration or not. The fact that we paid the compensation is the whole thing in this case."

In moving for a directed verdict counsel for defendant said in part:

"I move now, the case of the plaintiff being in, that the court direct a verdict for the defendant on the ground that no case is made by the declaration or proof under the Workmen's Compensation Act, entitling the plaintiff to recover anything in this case; and at this time I want simply to call attention to one fact, and that is that under the declaration and proofs in this case—and I take it, it is following out what are conceived to be provisions of this act—the attempt is made to say that Mr. Spinner and the Maryland Casualty Company, the insurance company, got together and made an agreement to which these defendants were no parties whatever, had nothing whatever to do with the agreement, and that the defendants are bound by the agreement so far as the amount of the injury is concerned. I say that if any statute undertakes to do that it is absolutely void as taking away a man's rights to his day in court, and as taking away his property without due process of law."

Upon this subject the record contains a further statement that during his argument in opposition to said motion counsel for plaintiff—

"acquiesced in the following statement by the court as to the theory upon which the plaintiff's case was based: I have understood you to claim, and that your declaration was based upon the theory, that the amount of liability was fixed definitely and inflexibly by the determination of the arbitration board, and that the only question here was as to whether or not there was a common-law liability against the railroad company for negligence."

In discussing and ruling upon this motion before instructing the jury, the court expressed the view that under plaintiff's pleadings, proofs, and theory of the case the only question for a jury would be that of negligence, damages having been determined by the arbitration board and agreement of parties without notice to or participation on the part of defendant, which raised a serious question "as to whether liability, so far as the amount is concerned, is finally and conclu-

sively fixed," and held that portion of the act which so provided, apparently and as plaintiff claimed, was therefore unconstitutional. During discussion of the motion by the court counsel for plaintiff further said:

"The act provides how compensation shall be paid, and in the absence of irregularity in the payment of that compensation, we must presume that the amount was legally fixed, and properly fixed, and reasonably fixed. The agreement had the approval of the board, and the extent of the payments was fixed by the board."

Counsel for defendant state in their brief that their motion for a directed verdict was based "on the ground that the statute as interpreted by the plaintiff was unconstitutional." The record not only seems to support this statement, but the views expressed by the court indicate that a verdict was directed against plaintiff upon that ground. Counsel for plaintiff contends here that some misunderstanding as to his position apparently arose in the minds of the court and defendant's counsel from the dialogues upon this subject during the progress of the trial, and that what he said has been interpreted as putting a stricter construction upon, or giving a narrower meaning to, the act than he intended to express, in substantiation of which he refers to his statement then made that the presumption obtained only in "the absence of any evidence of irregularity," etc., and urges his position then and now was in harmony with the following from *Binsse* v. *Wood*, 37 N. Y. 526, 531:

"The result of the litigation to which the present defendant committed himself, is binding upon him, without notice, leaving him, however, at liberty to show fraud, collusion, and perhaps that there was a good defense which the party neglected to interpose. The judgment or decision is evidence against him, and until attacked in one of these modes, is conclusive."

The record as a whole gives the impression that

plaintiff's counsel took an extreme position, emphasized by acquiescing in the interrogating statement of the court, which was not altogether modified or made clear by his subsequent explanation; but can it be said that the court should accept an erroneous construction of the statute, because counsel so construed it, and direct a verdict for defendant on the ground that the law under which the action had been brought was unconstitutional, if the statute properly construed is constitutional and under it plaintiff's proofs make out a *prima facie* case? As the court and defendant viewed it, counsel for plaintiff was claiming under the statute more for a line of testimony which he had introduced than he was entitled to, by contending that it was final and conclusive rather than *prima facie* proof. Plaintiff had introduced testimony showing or tending to show that its employee suffered an accidental injury arising out of and in the course of his employment under circumstances which the court held created, *prima facie*, a liability on the part of defendants; that plaintiff as an employer was liable for and did pay compensation under the act to the injured employee, and proved the amount so paid, as evidenced by the written agreement of the parties, approved by the board, by an order requiring it to make further payment, and receipts in full therefor. Its counsel's contention, as understood by the court and opposing counsel, that proof of the amount so paid was final and conclusive as to the measure of damages could have no greater significance than a request to so instruct the jury. If a proper case for submission to the jury was presented by plaintiff's evidence, the fact that counsel tendered an erroneous request to charge the jury as to the force and effect of a portion of that evidence would not authorize the court to dispose of the case as a matter of law because the theory of such request was wrong.

It is unnecessary to consider the argument made and authorities cited for defendant to sustain the contention that a law fixing conclusively the damages against a third party in a proceeding of which he had no notice, to which he was not a party, and in which he had no opportunity to be heard, is unconstitutional. For the purposes of this case it may be conceded that man of straw has been successfully overcome.

This case involves a relation of indemnitee and indemnitor, in which a liability over is placed upon the original tort-feasor whose negligence caused the injury, a relation which may be created by contract or legislation for protection of the party who, though not actively guilty of the tort, may, by law, be liable therefor to the injured party. In such cases the weight of authority indicates that a former judgment against the indemnitee, in which notice of the litigation is not given to the party who may be liable over, is adequate to create a right of action against the latter, and admissible as *prima facie* proof of his liability, though the omission to give notice gives him the right to make any defense which he could have made in the former action, with the burden of proof shifted to him. *Grant* v. *Maslen,* 151 Mich. 470 (115 N. W. 472, 16 L. R. A. [N. S.] 910); *Oceanic Steam, etc., Co.* v. *Transatlantica Espanola,* 144 N. Y. 663 (39 N. E. 360), and cases there cited.

Said section 15, pt. 3, of the Michigan act (2 Comp. Laws 1915, § 5468) is identical in substance and apparently copied almost verbatim from section 6 of the English Workmen's Compensation Act of 1897 (Stat. 60, 61, Vict. chap. 37). Amongst the rules promulgated in 1898 for administering the English act a provision is made for notice to any third party who may subsequently be held as an indemnitor, with opportunity for him to appear before the arbitration board if he desires, while no such provision is found in the Michigan

act, or any rules relating to it.  In *Nettleingham &
Co.* v. *Powell & Co.*, 1 K. B. (1913) 113, plaintiffs had
paid a certain amount to an injured employee by agree-
ment between the parties and a further sum under a
compensation award, just as in the case before us, and
brought an action under section 6 of the English act
to recover from defendant the amount so paid, claim-
ing the workman's injury was caused by an accident
imputable to the latter's negligence.  It was there
urged that plaintiff was not entitled to recover by rea-
son of having failed to comply with the rule relative to
notice in such cases.  The court held that service of
notice was not a prerequisite to right of action, but
if the employer chose, he might—

"without serving any notice under that rule, sue in the
high court for an indemnity subject to the obligation
of having to satisfy the court that the amount claimed
was properly paid by him."

The case of *Thompson & Sons* v. *N. Eastern Marine
Eng. Co.*, 1 K. B. (1903) 428, 435, contains an inter-
esting discussion of various aspects of this section in
which it is said, of compensation paid by an agreement
made under the act:

"But the decisive words in this case are, as it seems
to me, 'if compensation be paid under this act,' in the
latter part of the section.  Now, is such a payment
as has been made here under the agreement within
those words?  I think that I must hold that it is.  If it
is not paid under the act, why and how is it paid?  It
is clearly part of the scheme of the act that the parties
may agree, and the agreement is one of the modes of
settlement under the act.  * * *  I cannot  *  *
*  construe the section in any other way than accord-
ing to the natural meaning of the words of the section;
and I feel bound to hold that an agreement to pay
compensation, being one of the methods contemplated
by the act, payment under such an agreement is pay-
ment of compensation under the act, and the plaintiff's
right to indemnity from the defendants follows."

While it is true these English cases cannot be regarded as direct authority on constitutional questions, they are, when an English statute has been adopted here, authority to be recognized in the construction of such statute.

We think the closing portion of the paragraph under consideration clearly means that in an action against a third party to whose negligence a workman's injury is imputed, proof of the amount of compensation the employer paid the workman under the act, either by agreement of the parties, approved by the board, or by order of the board under and as provided for in the act, is *prima facie* evidence of plaintiff's damages, which the defendant is at liberty to meet and overcome, if able by any competent evidence showing that the same is unreasonable, not paid under or in accordance with the act, or not approved nor authorized by the board. So construed, we find the act constitutional.

The judgment is reversed, and a new trial granted, but without costs to either party.

STONE, C. J., and KUHN, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.