ROUSE, HAZARD & COMPANY v. JOSEPH W. DONOVAN,
CIRCUIT JUDGE OF WAYNE COUNTY.

*Limited partnership associations—Execution against members—
Constitutional law—Construction of statutes—
Due process of law.*

1. How. Stat. § 2366, which provides that, upon the return un-
satisfied of an execution issued against the property or effects
of a limited partnership association, an execution may issue
against any of the members of the association to the extent

of the portions of their subscriptions, respectively, in the capital of the association not then paid up, is not in conflict with the constitutional provision that no person shall be deprived of life, liberty, or property without due process of law.

2. The entry of a motion based upon the files and records in the case, and upon an affidavit setting forth the organization of the association, the rendition of the judgment, the issuance of the execution, its return unsatisfied, the amount of the capital stock of the association, the amount paid in by each member, and the amount remaining unpaid, together with service upon the association and each of its members of a copy of said motion and affidavit, with notice of hearing, constituted "due process of law."

3. The following propositions are summarized from the opinion of Mr. Justice GRANT:

a—The decisions of the court of last resort of a state, sustaining the validity of a statute in its entirety, are entitled to great respect by the courts of sister states when called upon to pass upon the validity of a provision in a statute similar in all respects to that of said state, and in most cases are held to be controlling when the law has been enacted after the making of said decisions.

b—Where said decisions were rendered after the passage of the statute in the other states, it cannot be said that their legislatures adopted the construction given to it by said decisions.

c—The due process of law required by the Constitution means that notice or summons by which a party is tendered his day in court, with a right to frame an issue and be heard before a judgment can be rendered or execution issued which shall take away his liberty or property.

*Mandamus.* Argued January 29, 1895. Granted February 26, 1895.

Relator applied for *mandamus* to compel the respondent to vacate an order denying its motion for the issuance of an execution against the individual members of a limited partnership association, under How. Stat. § 2366. The facts are stated in the opinion.

*Bowen, Douglas & Whiting* (*Otto Kirchner,* of counsel), for relator.

*Russel & Campbell,* for respondent.

GRANT, J. The relator, a foreign corporation, recovered judgment against the Detroit Cycle Company, a limited partnership association, for $1,705.50 and costs, being for goods sold. The cycle company was organized under chapter 79, How. Stat. Execution was issued, and returned *nulla bona.* The plaintiff then moved the court for an order directing execution to issue against the individual members of the defendant to the extent of the portions of their subscriptions, respectively, in the capital of the association not paid up. The motion was based upon the files and records of the cause, and upon an affidavit thereunto attached, which set forth the judgment, the organization of the defendant, the issuance of execution and return, and a copy of its articles of association, showing that the association consisted of three members; that the capital stock was $10,000, subscribed for in equal amounts by each of its members; that $1,000 was paid in by each at the time of the organization; and that the balance of the capital, $7,000, was to be paid from time to time, as needed. The affidavit further alleged that subsequently each member paid in $500, and that the balance of the capital had not been paid; that the defendant had mortgaged all its property to one creditor, and that each member had executed a note to the defendant for the balance of his unpaid subscription, and had then turned these notes over to that creditor, with the agreement that they were not to be paid; that such action was in fraud of other creditors, who were entitled to the amount of the unpaid capital to apply upon their debts. A copy of this motion and of the affidavit, with notice of hearing, was duly served upon the defendant association and each of its members. These members appeared specially at the hearing of the motion, and protested against its consider-

ation by the court, because section 2366, How. Stat., which provides for the issuing of an execution against the individual members, is unconstitutional and void, in that it violates section 1 of the fourteenth amendment to the Constitution of the United States, and section 32 of article 6 of the Constitution of this State, both of which provide that no person shall be deprived of life, liberty, or property without due process of law. The judge sustained this contention, and denied the motion. Relator thereupon applied to this Court for the writ of *mandamus* to compel the vacation of this order made by the respondent.

The section upon which the question arises reads as follows:

" The members of any such partnership association shall not be liable under any judgment, decree, or order which shall be obtained against such association, or for any debt or engagement of such company, further or otherwise than is hereinafter provided, that is to say: If any execution or other process in the nature of execution, either at law or in equity, shall have been issued against the property or effects of the company, and if there cannot be found sufficient thereof whereon to levy or enforce such execution or other process, then such execution or other process may be issued against any of the members to the extent of the portions of their subscriptions, respectively, in the capital of the association not then paid up: *Provided always,* that no such execution shall issue against any member except upon an order of court or of a judge of the court in which the action, suit, or other proceeding shall have been brought or instituted; and the said court or judge may compel the production of the books of the association, showing the names of the members thereof, and the amount of capital remaining to be paid upon their respective subscriptions, and from them or other sources of information ascertaining the truth in regard thereto, and may order execution to issue accordingly; and the said association shall be and it is hereby required to keep a subscription list book for that purpose, and the same shall be open to inspection by the creditors and members of the association, at all reasonable times: *Provided,* that nothing herein contained shall be construed to exempt the members of such partnership as-

sociation from individual liability for all labor performed for the association."

Joint stock companies, similar in character to those authorized by the statute of Michigan, were early organized in most of the states, and were recognized as lawful without legislative enactment. Their existence and methods were early modified and controlled by statute. An act, similar in character, was passed by the legislature of New York in 1849. Pennsylvania, in 1874, enacted the first law in this country for the organization of limited partnership associations. In 1877 the Legislature of Michigan passed an act similar in all essentials to that of Pennsylvania. It is almost an exact reprint of it. The Pennsylvania act first required the capital stock to be paid in cash. It was afterwards amended so as to permit contributions to be made in real or personal estate. Virginia, New Jersey, and Ohio enacted the same law in 1875, 1880, and 1881, respectively. In Pennsylvania alone does the law appear to have come before the court of last resort for construction. The supreme court of that state in many decisions has sustained its validity in its entirety, and has expressly passed upon the question now before us. Such decisions are entitled to great respect by the courts of sister states, and in most cases are held to be controlling when the law has been enacted after the construction placed upon it by the court of that state. The following are the leading cases in Pennsylvania sustaining the act: *Bement v. Machine Co.*, 12 Phila. 494; *Maloney v. Bruce*, 94 Penn. St. 249; *Lauder v. Tillia*, 117 Id. 304; *Lauder v. Logan*, 123 Id. 34; *Cox v. Watts, Twells & Co.*, 157 Id. 93. All the decisions of that state were rendered after the passage of the act in Michigan, and therefore it cannot be said that the Legislature adopted the construction which that court has given.

The decision in the case now before the Court must be

reached with the well-recognized principle in view that—

"The power of declaring laws unconstitutional should be exercised with extreme caution, and never where serious doubt exists as to the conflict. In cases of doubt, every possible presumption, not clearly inconsistent with the language and the subject-matter, is to be made in favor of the constitutionality of the act." *Sears v. Cottrell*, 5 Mich. 259, and authorities there cited.

The due process of law required by the Constitution means that notice or summons by which a party is tendered his day in court, with the right to frame an issue and be heard before a judgment can be rendered or execution issued which shall take away his liberty or property. This constitutional provision was "intended only to protect persons from being deprived of their property *without their assent* unless by due process of law." The same objection was raised to an entry of judgment upon an appeal bond against the sureties without notice to them; but it was held that the bond should "be read in all respects as if the whole of the statute in reference to the appeal, the bond, and mode of entering up judgment upon it were recited at large in the bond." *Chappee v. Thomas*, 5 Mich. 53, 59. So the summary seizure upon a warrant, without a suit, of the property of a defaulting city treasurer and his sureties was held not to have been made without due process of law. *Weimer v. Bunbury*, 30 Mich. 201. This was upon the ground that the warrant was an administrative, and not a judicial, process. An able and instructive discussion by Mr. Justice COOLEY on the meaning of due process of law will there be found.

It appears to be conceded that if, under this statute, the members of the association are entitled, as a matter of right, to their day in court in a proceeding where the issue of fact may be framed and determined, the notice given is due process of law. But it is insisted that the statute makes no provision for a trial, and it is left to the

court's discretion to give one. This point was expressly decided in *Lauder v. Tillia, supra,* in which execution was issued against the members without notice to them. The court held that, when the property of the association was exhausted, the court should subrogate the creditor to its demands against its members for unpaid subscriptions; that the association was not in position to show cause for its debtors; and that the rule to show cause why execution should not issue should be served upon the members.

That the creditors of such associations are entitled to the unpaid subscriptions is too clear for argument. The proceeding is analogous to that authorized by statute, whereby the judgment creditor may summon his judgment debtor or other persons before the court, after return of an execution *nulla bona,* to disclose property subject to an execution. The proceeding against the members in the original suit, and in the court in which judgment has already been rendered against them in their collective capacity, is ancillary to that suit and judgment. By their own voluntary act in organizing they have read the statute into their articles of association, and have solemnly agreed with their creditors that execution may issue against their unpaid subscriptions. The issue to be determined by the court is simple, viz., how much, if any, of their subscription is unpaid? The statute clearly contemplates and provides for an investigation by the court, for it is authorized to compel the production of the books, and to ascertain the truth from other sources of information. The court has jurisdiction and is clothed with all the machinery necessary to frame the issue and afford a trial with all the incidents of a judicial proceeding. What other course should be pursued? The creditors are certainly not without remedy, for this would result in the accomplishment of a gross fraud. Should they resort to a court of equity? No such course is provided by this statute, and all parties

would still be in the same court, and before the same judge, and with the same issue. Is there any objection or lack of power in the Legislature to authorize the court of law to determine the question? We can see none. We think it the obvious purpose of the statute to avoid an expensive proceeding in chancery, which might necessarily result in the appointment of a receiver. It must be presumed that the Legislature understood that it was conferring this power upon a court already equipped with the necessary machinery to bring the parties before it and to adjudicate their rights.

The learned counsel for the respondent cite and appear to rely mainly upon *Parsons v. Russell*, 11 Mich. 113, and *Risser v. Hoyt*, 53 Id. 185. It is unnecessary to review these decisions at length. We think the distinction between them and the case at bar is apparent. In *Parsons v. Russell* the boat and vessel law was held unconstitutional and void, because it provided that a vessel could be seized and sold upon the mere assertion of a debt, without any proof to substantiate the claim before a judicial tribunal, and without any judgment or decree allowing the sale. In *Risser v. Hoyt*, Act No. 193, Laws of 1883, to prevent debtors from giving preference to creditors, etc., was held unconstitutional for many reasons. It was held that the act provided for no judicial proceedings whatever, nor for any adjudication upon the allegations of the petition filed. Three opinions were written, in but one of which was any reference made to the point that the act provided for the taking of property without due process of law.

In the present case the members of the association, through the suit against it, have had their day in court to test the relator's claim, and judgment has been duly entered. The relator is entitled to a levy upon all the

104 MICH.—16.

assets of the association and to a sale thereof in satisfaction of its judgment. The subscriptions of the members are a part of such assets, which they are legally and morally bound to contribute. The statute and their own solemn agreement have provided a simple method by which such assets can be reached. The proceedings taken by the relator were such as are contemplated by the statute, and constitute due process of law.

The writ of *mandamus* must issue.

The other Justices concurred.